## Zerr v. Zerr.

(Decided May 18, 1920.)

Appeal from the Kenton Circuit Court
(Criminal, Common Law and Equity Division).

Divorce—Grounds—Physical Condition—Evidence.—Where in an action by the husband against the wife for a divorce on the ground of "such malformation on the part of the wife as prevents sexual intercourse," the only evidence bearing on the physical condition of the wife was furnished by two physicians by whom she was examined; one a general practitioner with little surgical experience who was unwilling positively to testify to the existence of the alleged malformation; the other an eminent surgical specialist of many years' practice in the treatment of the diseases of women and their genital organs, who positively testified to the non-existence of any malformation of the wife, in such state of case the action of the circuit court in adjudging the ground of divorce not sustained by the weight of the evidence and dismissing the petition of the husband, was not error.

O. M. ROGERS for appellant.

JOHN A. RICHMOND for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action for a divorce *a vinculo* was brought by the appellant against the appellee, his wife, in the court below, February 19th, 1919; the ground alleged in the petition for the divorce being "such malformation on the part of the wife as to prevent sexual intercourse." The appellee, after being constructively summoned, answered traversing the averments of the petition and alleging her abandonment by the appellant, his failure to support her, and setting up claim to alimony, to recover which the answer was made a counterclaim. Her right to alimony was controverted by reply, and, following the taking of proof on the issue as to the question of divorce,

and submission of the case, the circuit court rendered judgment refusing appellant the divorce prayed and dismissed his petition, but retained the case on the docket for the purpose of determining the question of appellee's right to recover of appellant alimony on her counterclaim. From this judgment refusing the latter a divorce, he has appealed.

It appears from the evidence that the appellant after a married life of twenty-six years with a previous wife, who on November 25th, 1918, by judgment of the Kenton circuit court obtained from him an absolute divorce, was married December 11th, 1918, to the appellee, then Miss Lida Faller, at her home in the city of New Orleans. Several days later the bridal couple returned to the city of Covington, this state, then and now the place of appellant's residence, where they stopped ten days or more at the home of Mrs. Henkenburns, his sister. Before leaving the home of his sister appellant claimed to have made the discovery that he was unable to have sexual intercourse with appellee, owing as alleged, to some defect of her genital organs preventing penetration of the male organ.

Acting upon the appellant's advice appellee accompanied him to the office of Dr. Keiffer, his family physician, and there submitted to an examination of her genital organs by the latter, who thereafter reported the result of the examination to appellant, but made no report thereof to appellee. Shortly after receiving Dr. Keiffer's report the appellant, without informing appellee of the nature thereof, represented to her that he had been offered by or would obtain of the Federal government employment as an electrician, which would necessitate a change of his residence; but that while he was awaiting information from the Federal authorities as to the name of the city in which his acceptance of the employment would require him to reside, it would be advisable for appellee to visit her sister in New Orleans, and that as soon as he became located in the city to which his employment would require his removal, he would send for her to rejoin him in their new home there. Relying upon these representations appellee yielded to the wishes of the appellant and, following his purchase for her of ordinary railroad fare and Pullman tickets, returned by rail to New Orleans for a visit to her sister, where she has since remained because of the refusal of

appellant to permit her to return to him, although he was repeatedly requested by letters from her to give such permission. His refusal of these numerous requests was communicated to her by a single letter from him which contained the first and only information she ever received of Dr. Keiffer's report of his examination of her person, and likewise the information that she would never again be received by appellant as his wife.

After thus being advised of Dr. Keiffer's report of his examination of her, appellee caused an examination of her genital parts to be made by Dr. Miller, an eminent physician and surgeon of New Orleans, whose report thereof, as will presently be seen, differs materially from that of Dr. Keiffer. The depositions of these physicians appear in the record. That of Dr. Keiffer shows that he is only a general practioner of fourteen years' experience as a physician; that of Dr. Miller that he has had a practice of twenty-six years as a specialist in those branches of medicine and surgery relating to the anatomy and diseases of females, and that he is and has been for several years a professor of "Obstetrics and clinical gynecology" at Tulane University, New Orleans. According to the definition given by Wester's dictionary, gynecology is "The science which treats of the structure and diseases of women."

It will be found from a reading of their respective depositions that wholly different methods were pursued by these doctors in making their examination of appellee. The examination of Dr. Keiffer consisted of a mere look at the genital parts and an attempt to insert the little finger in the vagina, which he testified could not, owing to the hardened condition of the hymen, be made to penetrate further than the first joint of the finger. In the examination of Dr. Miller both the finger and speculem were used. The "speculem" is defined by Webster to be "an instrument for dilating certain passages of the body and throwing light within them, thus facilitating examination or surgical operations." It would be no reflection on Dr. Keiffer to say that the examination made of appellee by Dr. Miller was far more thorough and satisfactory than the one made by him; and furthermore, that the many years' experience of Dr. Miller as a specialist in those branches of medicine and surgery relating to the structure and diseases of women, qualify him to testify as an expert and with the highest author-

ity as to whether appellee is the victim of such malformation as will prevent sexual intercourse with a normal male. Coming, therefore, to the consideration of their respective depositions, which furnish the only proof of the physical condition of appellee's genital organs, it remains to be determined whether the alleged malformation is shown by the weight of the evidence to exist.

It appears from the expressed opinion of Dr. Keiffer, arrived at from his digital examination of appellee's person, that a surgical operation upon her would be necessary to enable appellant to have sexual intercourse with her, not, however, because of any malformation, for he was unwilling to say that such malformation was bound to exist, but because he did not believe her hymen, by reason of its toughness and the small opening presented, could be ruptured by an attempted penetration of the male organ. On the other hand it was the conclusion of Dr. Miller, reached from the more thorough examination of appellee made by him, that she will not have to undergo a surgical operation to permit such copulation. According to the further testimony of Dr. Miller appellee's genital organs show no malformation whatever, and though the hymen is more rigid than in a younger woman, it is not impenetrable to the genital organ of the normal male. Both physicians testified that appellee is a small woman, not over five feet three inches in height; that her weight will not exceed one hundred and ten pounds and that she is the possessor of a normal and even symmetrical figure. It is not disputed that she is forty-eight years of age and as she was never married until she became the wife of the appellant and, manifestly, never had sexual intercourse with a man, it was not to be expected that her vagina could be penetrated by the appellant with the ease that would attend copulation with a younger woman, or one experienced in such exercise.

It is not to be overlooked that the burden of establishing by proof his right to the divorce prayed is upon the appellant and such right has not been proved. The evidence wholly fails to show the alleged malformation complained of; and its weight is to the effect that there is no such defect in the appellee's genital organs as would prevent sexual intercourse with her by appellant, if he is a man of normal sexual and physical capacity. It is

evident from the contents of her several letters to him, introduced as evidence in his behalf, that in his efforts to have sexual intercourse with her he had used none of the aids that properly might have been employed to render easy the accomplishment of the copulation desired. In several of those letters she informed appellant that her sister in New Orleans had advised her that the use of vaseline for awhile in the act of copulation would enable him to attain his object, and implored him to let her return to him that he might resort to this remedy; but these appeals, which manifested her affection for him and willingness to gratify the marital right demanded by him, were unavailing and remained unanswered.

In addition to what has been said, it should be remarked that appellant has failed to prove that the abortiveness of his alleged efforts to have sexual intercourse with appellee did not result from his own want of virility, or physical capacity to perform the act, rather than from her physical malformation. Appellant is shown by the evidence to be 51 years of age, and while this age ordinarily does not disqualify a man for the performance of such a marital rite as that of which appellant claims to have been deprived, if his past life has been so given over to the excessive indulgence of his sexual appetites or other dissipations as to bring upon him disease and decay, it may well be questioned whether he is competent to perform the marital act referred to.

Whether appellant's past life has been a clean one or so illy spent as to bring upon him the decay that would disqualify him to perform the act of sexual intercourse, we are unable to say, as no proof regarding same is to be found in the record. It would have strengthened his case had he introduced proof which, at least, conduced to show that he is physically able to perform such act as nature intends it should be done. But he has not made such proof and consequently has not shown himself to be without fault.

We concur in the conclusion reached by the circuit court in its decision of this case. The appellee's physical condition conclusively proves her virginity, but fails to prove the alleged malformation.

Wherefore the judgment is affirmed.