## Barnett v. Barnett.

Jan. 15, 1943.

Ross, Ross & Bayer for appellant.

J. P. Chenault and H. D. Parrish for appellee.

OPINION OF THE COURT BY JUDGE SIMS.—Affirming.

Appellee and plaintiff below, Charles R. Barnett, brought suit against appellant, Anna B. Reid Barnett, for a divorce on the grounds of such malformation as prevented sexual intercourse, and of cruel and inhuman treatment. Her answer traversed the averments of the

petition, and by way of counterclaim she asked a divorce because of appellee's alleged cruelty and sought alimony in the sum of $10,000.

The chancellor granted appellee a divorce on both grounds averred in the petition and dismissed appellant's counterclaim, but adjudged that the cost of the action, including the wife's attorney fee of $200, be paid by the husband. She had but little property and he is not complaining about the cost being taxed against him. Appellant concedes that Section 21.060, KRS, precludes this court from reversing a judgment granting an absolute divorce, and she appeals only from so much of the judgment as denied her alimony.

The parties were married on August 25, 1937, at which time she was 54 and he was 65 years of age. This was Mrs. Barnett's third trip to the altar, and his second. She lived with her first husband, Mr. Ballingee, seventeen years until his death in 1922. On May 20, 1936, she married a Mr. Reid in Indiana and lived with him until July 18th, of that year, at which time she had him arrested and while he was in jail she put their household effects in a truck and came to Richmond, Kentucky. Reid sued her for a divorce. In the case now before us when asked upon cross-examination if Reid had obtained a divorce, she replied, "I don't know, I guess he did. He applied for it and I didn't fight it". She further stated a letter from Reid's daughter contained the information that he was dead.

Mr. Barnett lived with his first wife thirty-eight years. She was an invalid for a number of years preceding her death, and after she died on January 16, 1937, a colored woman, eighty years of age, Cornella Griffin, who had nursed his wife, kept house for him. He was worth about $20,000, and appellant testified she had heard he was a very splendid old gentleman and she thought she could be happy with him. She operated a rooming house in Richmond and first met appellee in April 1937, when she went to his home one evening about dark saying she was interested in buying some furniture.

Some few days before their marriage they were in an automobile wreck in his car in which she suffered a broken leg and Mr. Barnett had her removed from the hospital to his home where they were immediately married. She was confined to her bed and he suggested put-

674

ting a cot in her room so he could wait on her. It did not suit her to have Mr. Barnett in the room with her, but she permitted it. The next morning she did not want him to kiss or touch her. She made fun of his clothes and hat, said his hair was not cut to suit her and wanted him to have his mustache shaved. Since she did not want to be kissed, we are at a loss to understand why she wanted the old gentleman to shave his mustache. When her fractured leg healed she would not sit on the front porch with her husband, nor walk with him to town, saying it was "tacky" for a man's wife to walk the streets with him.

Many husbands over 50 years of age have had their wives criticize their clothes and have been told they needed hair cuts, but it is usually done in a gentle manner and often accompanied by the veiled compliment that his looks will be made to comport with his pleasing personality. Even if kindly made, such suggestions are hardly appropriate in a bride of less than twenty-four hours. And when a bride refuses to kiss her husband the day after the wedding, something is surely amiss. Added to this, was the further humiliation above referred to, that Mrs. Barnett refused to sit on the porch with her husband or to walk with him on the streets. His testimony is that as time increased so did his wife's contempt for him and that after three years of it he could stand such treatment no longer and instituted this suit.

Mrs. Barnett denied the charges of cruelty averred by her husband and stated that the remarks she made about his clothes were in fun and that he talked more about them than she did. But when asked if she was affectionate and kind to him, she did not answer the question. She testified he was penurious with her, cold, indifferent and would fly into rages. She seems to especially resent the fact that he brought this action while she was on a visit to her sister in an adjoining county. However, she returned to his roof, although not to his room, and remained there several months during the pendency of this suit.

The testimony was heard before the chancellor and not by depositions. Likely he knew the parties—certainly he saw their demeanor on the witness stand and was in a much better position to pass upon the facts than we are. A reading of the record convinces us that his finding the husband was entitled to a divorce under Section 403.020(4) (d), KRS, on cruel and inhuman treatment

is not against the weight of the evidence, but rather is in full accord therewith and we have no inclination to disturb it. It appears from the record that Mrs. Barnett only married Mr. Barnett to obtain a home and financial security with no intention of bestowing upon him any affection. It was written in Hawkins v. Hawkins, 202 Ky. 55, 258 S. W. 962, that with such ends in view a wife cannot treat her husband with cold indifference and contempt and then recover alimony.

There is considerable contrariety in the evidence as to whether or not Mrs. Barnett was so malformed as to prevent her husband from having sexual intercourse with her. It would serve no useful purpose to discuss the evidence on this subject and it would likely be embarrassing to the parties. Therefore, it should suffice when we say that the testimony of the medical experts in the record amply support the chancellor's finding that the wife was so malformed as to prevent the husband from enjoying marital privileges, which is a ground of divorce under Section 403.020(1) (a), KRS.

Appellee insisted that under the case of Zerr, v. Zerr, 188 Ky. 233, 221 S. W. 550, the burden was upon the husband to show that the failure of the couple to cohabit was due to malformation of the wife and not to lack of virility on his part. The petition charged malformation of the wife and the husband had the burden of sustaining it by proof, which the chancellor held he had done, and we are in full accord with that finding.

Although appellee denies the malformation, she argues that if it should be conceded that such condition existed, it was without fault on her part. She cites 17 Am. Jur. 225, sec. 145, to the effect that a divorce granted on this ground is not on the theory that the wife has violated marital obligations, but that the husband should be released from a marriage which is one in name only. She insists that under the rule in Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165, and other cognate cases, the wife is entitled to alimony where the husband erroneously obtained a divorce without fault of the wife. The answer to this argument is twofold. First, the chancellor did not erroneously grant the husband a divorce without fault of Mrs. Barnett. On the contrary her treatment of him was so cruel as to entitle him to a divorce and to prevent her recovering alimony. Second, it was written in Mutter v. Mutter, 123 Ky. 754, 30 Ky. L. R. 76, 97 S. W.

393, 124 Am. St. Rep. 381, that a wife who was so malformed as not to be able to engage in marital rites was so in fault within the meaning of the divorce statute, sec. 403.020, KRS, as to deprive her of alimony. The Mutter opinion said that the "fault" referred to in the statute meant more than deviation from the rules of propriety; that it also meant a blemish, or impairment of excellence.

Complaint is made by appellant that the chancellor erred in failing to strike from appellee's reply that she concealed from him the fact that she had a former living husband at the time of their marriage when she knew he was conscientiously opposed to marriage under such conditions; also, she complains that the court erred in hearing testimony on this fact. From the conclusion we have reached it is unnecessary to pass upon this question and we decline to consume the time and space necessary to do so.

The judgment is affirmed.