# Johnson v. Johnson.

Dec. 10, 1943.

B. J. Bethurum and Gladstone Wesley for appellant.

H. C. Kennedy for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The appellant, Icy Johnson, sued Glenn Johnson for divorce and $5,000 alimony charging him with cruel and inhuman treatment. By answer and counterclaim he traversed the material allegations of the petition and asked a divorce against her on the same grounds. Much proof was taken and upon final submission the chancellor refused her a divorce or alimony, but adjudged certain personal property to belong to her, and further adjudged that she be paid $250 in lieu of her interest in certain crops growing on the farm of her husband at the time of the separation. The chancellor granted a divorce to the husband on his counterclaim and the wife appeals.

It is not contended that this court may reverse a judgment granting a divorce but it is insisted that as plaintiff was entitled to a divorce, we should reverse so much of the judgment as denied her alimony. KRS 21.060; Land v. Land, 280 Ky. 122, 132 S. W. (2d) 742. The only ground assigned for reversing that part of the judgment refusing alimony is that the evidence does not sustain the chancellor.

These parties married on Oct. 5, 1930, and separated on June 25, 1942, on which day this suit was filed. The first five or six years of their married life appears to have been reasonably happy although they were unfortunate enough to lose their only child. Defendant was an unusually hard working farmer intent upon accumu-

lating some property, and succeeded in becoming the owner of two farms aggregating about 175 acres worth between $3,000 and $3,500. He had some livestock and farming tools which increased his net estate to some $4,000 or $4,500. About seven years before their separation Mrs. Johnson's brother, Arvis Ard, and wife, Rowina, became defendant's tenants on his farm located some mile and a half from the one occupied by the Johnsons.

Mrs. Johnson admits she became jealous of her sister-in-law soon after the latter moved on her husband's farm. She claims Mr. Johnson spent too much time on the farm and around the home occupied by her brother and his wife; that he and Rowina usually found it convenient to work together in the fields while cultivating the crops; that he bought some clothes for Rowina; took her and her two children, age five and seven, to Somerset on various occasions and neglected his own wife. She is supported to some extent by her witnesses and it was proved that Mr. Johnson was quite fond of the Ard children and at times referred to them as "my babies."

Mr. Johnson's testimony satisfactorily explains the accusations made by his wife. The Ards were quite poor but were industrious and he attempted to assist them. He admitted his devotion to his two small nieces, the elder of whom spent much time in his home and attended school from there; that he often referred to the children as "my babies," just as any affectionate uncle might, with no intention of intimating that he was their father. His wife was present when he bought some dresses on two occasions for Mrs. Ard and selected them for her sister-in-law, which Mrs. Johnson admits. That when he went to Somerset with Mrs. Ard other persons always accompanied them and the trips were either on business or for the children to receive medical attention. He denied any preference was shown Mrs. Ard while field work was in progress, or at other times.

Mrs. Johnson testified her husband admitted to her that he was in love with Rowina and inquired how much money she would take to leave him. He denied this. But it was not denied by her that Mr. Johnson was quite ill with a stomach malady and she slept with him the night of the 24th of June and left him the next morning without a word and filed this action and at-

tached his property. Her brother, Robert, who made his home with the Johnsons, testified that his sister told him she was leaving but not to tell her husband. She admitted her husband never struck her or called her bad names, but that she did call him a bastard.

She did not get along with her husband's family, was jealous of her sister-in-law without cause, as the chancellor held, and by her own admissions quarreled at her husband daily over Rowina. According to the testimony of Mr. Johnson, his wife was jealous of another sister-in-law, Pate Ard; a niece, Gertrude Ard; her step-mother and several other women named in the record; all without any misconduct on his part.

Nothing so disrupts domestic tranquility as unfounded jeaolusy and Mrs. Johnson appears to have been almost completely consumed by its devastating flames. Before the 1936 amendment to KS sec. 2117, now KRS 403.020, making habitual cruel treatment by the wife towards her husband for no less than six months a ground of divorce to him, we wrote in Sales v. Sales, 222 Ky. 175, 300 S. W. 354, that unwarranted jealousy on the part of the wife accompanied by incessant nagging justified the husband in leaving her. Since that amendment, we have upheld the chancellor's judgment granting the husband a divorce on this ground and refusing the wife alimony where the facts did not show near as much cruelty by the wife as is exhibited in this record. Barnett v. Barnett, 292 Ky. 672, 167 S. W. (2d) 845.

Although the evidence is conflicting, we are convinced that the chancellor's decision is correct. But even if our minds were left in doubt from reading the evidence, under the familiar rule we would be constrained to follow the judgment of the chancellor. Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606.

Certain portions of the record are in dim type and the type in the reply brief is so dim that it could be read only with difficulty. We call attention to rule 3, section 2 and to rule 5 of this court requiring typewritten transcripts and briefs to be written with a black record ribbon which is not faded and with clean type which does not blur the letters.

The judgment is affirmed.