## HOGUE v. HOGUE.

### No. 14329.

Court of Civil Appeals of Texas. Dallas.

May 4, 1951.

Blakeley & Blakeley and Carey Williams, all of Dallas, for appellant.

Jack Y. Hardee, Robert H. Fields and W. B. Fields, all of Athens, for appellee.

CRAMER, Justice.

Appellee filed this action based on cruel treatment for a divorce against appellant and for custody of their minor child. In a contested trial before the court without a jury the divorce was granted appellee but the custody of the child was awarded appellant, with an allowance of $25 per month for the support of the child. Appellant duly perfected her appeal and here assigns three points of error to the granting of the divorce, in substance that appellee failed to establish by full and satisfactory evidence (1) six months residence

in Henderson County; or (2) cruel treatment as alleged; and (3) error in granting divorce on the uncorroborated evidence of appellee. The evidence on the first point was that prior to the first wedding both parties lived at Brownsboro in Henderson County, Texas, had gone to school together, and known each other all their lives. Appellee had returned from some three years service in the Army and entered Southern Methodist University, where appellant was also a student, and went with appellant about a month before their first marriage. A short time after such first marriage, appellee was granted a divorce from appellant. On July 22, 1946, they remarried in Brownsboro and operated a store there for about 18 months; then sold the store and started on vacation to Mexico with intention of returning and going to school. While passing through the Valley, they decided to stop there and farm for a while in order to add to their school funds. Failing to accumulate more than a living, they left about four months later and went to Kilgore where appellee enrolled in Kilgore Junior College. While there, he and his wife ran a liquor store. They left Kilgore about September 1949 and went to Commerce where appellee again entered school; while in school there, worked some in a grocery store; his testimony being that he did not intend to make his home any place other than Brownsboro in Henderson County; that he had no intention of living any other place permanently until he finished school. He testified that he and his wife would return to Brownsboro and remain until he found a job, and then if he found better permanent employment away from Brownsboro than in Brownsboro he probably would move to such place where such permanent employment could be obtained. Until then, Brownsboro would be his home.

■ Appellee further testified on cross-examination:

"Q. You don't intend to come back to Brownsboro after you leave Commerce, you stated on cross-examination that you were going to get a job and go wherever it was necessary to work? A. If I find one I will.

"Q. You don't intend to return to Brownsboro after you finish school? A. I probably will, because my folks live there.

"Q. What are your intentions, you have said you will try to get employment? A. A man has to have a home, and Brownsboro is my home.

"Q. In the last few years you haven't spent any time in Brownsboro at all to amount to anything, since you left and went to San Benita, have you? A. Well, we have been back quite a little, we came home once a week.

"Q. Just came home on visits? A. Yes, we came home on visits, school students do that.

"Q. You didn't live there through any of that time? A. Lived at Brownsboro, I was going to school, I couldn't live there.

"Q. During that time you maintained a home either in Kilgore or Commerce? A. I maintained a residence, I couldn't have a home, I am not rich. I had a home in Brownsboro, that was my home and is now."

He also testified that he did not then have any property in Henderson County or elsewhere; that the only poll tax he had paid was either in 1946 or 1947, and in Henderson County; that as a student in College, his designated home was Brownsboro in Henderson County. While appellee's evidence was controverted by appellant, such conflicts were by the trier of the facts resolved in appellee's favor. Under the facts the domicile claimed by appellee was his domicile of origin as distinguished from a domicile of choice. As stated in Struble v. Struble, Tex.Civ. App., 177 S.W.2d 279, at page 283, Syl. 2: "* * * The former is the domicile of the person's parents, or the person on whom he is legally dependent, at the time of his birth. The latter is that place which a person chooses for himself. It has for its true basis or foundation the intention of the person. 28 C.J.S., Domicile, § 4 et seq., p. 10 et seq." In Texas "the rule seems to be well established that, where one has a domicile of origin, in order to show a change, clear and convincing proof of change of domicile must be made. * * *"

Dodd v. Dodd, Tex.Civ.App., 15 S.W.2d 686, at page 687, Syls. 1–3. In the same case it is also stated: "The words 'inhabitant,' 'resident,' and 'citizen,' as used in our statute pertaining to divorce, have substantially the same meaning." Temporary absence from the county of domicile and residence does not break the continuity of the residence or change the domicile of origin. As said in the case of Snyder v. Snyder, Tex.Civ.App., 279 S.W. 897, 898: "The allegations as to Bexar county not being the residence of appellee cannot be sustained. Appellee was born and reared in San Antonio and owned property in that city. He was a baseball player attached to the New York Giants, a noted ball team, and spent his summer months in the North, in the baseball season playing with his team, but came to San Antonio. He had the legal right to sue for a divorce in Bexar county, Tex."

■ The findings of the trial court having substantial support in evidence, and having been full and satisfactory to the trial judge, we approve same. Bomar v. Bomar, Tex.Civ.App., 229 S.W.2d 859, Syl. 3; Therwhanger v. Therwhanger, Tex.Civ. App., 175 S.W.2d 704, and cases there cited. Point 1 is overruled.

■ The second point challenges the trial court's finding of cruel treatment. This fact also in a divorce case must be established by full and satisfactory evidence not only to the trial court but to this Court.

■ Cruel treatment, as used in our statute, Art. 4629, Vernon's Ann.Civ.St., may be physical or mental, or both, and must be such as to render the parties' living together insupportable. In considering such fact, each case must of necessity stand upon its own peculiar testimony. Acts which may be intolerable to one person may not be so to another. All the evidence must be examined in the light of the nature, object, and importance of the marriage contract. It is entered into with the intent that it shall exist so long as they both shall live, and cannot, as an ordinary contract, be dissolved by mutual consent. In considering the statement of facts as a whole, we are inclined to give great weight to the findings of the learned trial judge who saw and observed both parties as they testified from the witness stand. The statement of facts would seem to reveal that much that he saw, in addition to what he heard, would have great weight in connection with the findings of fact necessary here, and which cannot be seen, and only vaguely understood from the written statement of facts before us. Only the husband and wife testified on the trial. Both were present and faced each other as they testified, one from the witness stand and the other from his or her place by their respective attorneys. Their demeanor revealed more than their spoken words.

■ Under the record here, viewed solely from the written word, we could conclude either that the acts charged as cruel treatment were or were not committed; also, if committed, that they were or were not intolerable or unendurable to the plaintiff. Under all the circumstances we find that the acts testified to by appellee and found by the trial court to be true, sustained the trial court's finding their further living together was insupportable, and we approve the trial court's findings thereon. Point 2 is overruled.

■ The third point is also overruled. The testimony of both plaintiff and defendant was fully developed in the trial court. Divorce may under such circumstances be granted on the sole testimony of one party, although directly controverted by the other spouse. Finn v. Finn, Tex.Civ. App., 195 S.W.2d 679.

Affirmed.