### LEWIS et al. v. LEWIS.

Court of Appeals of Kentucky.
May 11, 1951.

Yancey, Martin & Ockerman, Lexington, Astor Hogg, Harlan, James A. Dixon, Miami, Fla., for appellant.

E. L. Morgan, J. B. Carter, Harlan, for appellee.

SIMS, Justice.

W. W. Lewis sued his wife for divorce on three grounds; 1. The marriage was obtained by "force, duress or fraud"; 2. cruel and inhuman treatment; 3. attempted injury and threats by the wife to do him great bodily harm. Mrs. Lewis' answer was a denial, followed by a counter-claim wherein she charged her husband with cruel and inhuman treatment and sought $50,000 alimony, $500 per month maintenance and a reasonable attorney's fee, but she did not ask for divorce. The chancellor granted the husband a divorce, refused the wife alimony and maintenance but adjudged that the husband pay the cost, including an attorney's fee of $75 for his wife. She appeals from so much of the judgment as refused her alimony and an allowance, and her attorneys appeal from that part of the judgment fixing the fee at only $75.

The parties were married in Florida on March 28, 1948, and separated in Harlan, Ky., on July 10th of that year. At the time of their marriage the wife was 33, the husband gave his age as 63, but in fact he was in his seventieth year. He was in wretched health, had been a paralytic for nine or ten years with no use of his left hand and arm, and had serious heart trouble, all of which Mrs. Lewis was aware before their marriage. Her sister, Mrs. Graw, had nursed Judge Lewis for a number of years and Mrs. Lewis had on occasions substituted for her sister in nursing and caring for the old man. His testimony is to the effect that Mrs. Lewis was the aggressor in their courtship and assured him that she liked to care for old people and invalids.

Judge Lewis had been married previously and was divorced. He and his bride-to-be seriously disagreed before their wedding as she wanted to marry in the Episcopal Church, while he wanted no inquiry by the church into his previous marriage. For a short time their engagement was broken and Mrs. Graw told Judge Lewis her sister was so disconsolate she threatened suicide. Mrs. Lewis testified that Mrs. Graw fabricated that tale to Judge Lewis without her knowledge or consent.

On Feb. 7, 1948, the parties entered into a written contract whereby she waived all claims to his estate in consideration of his transferring to her certain corporate stocks. Then on March 25th, three days before the wedding, they entered into a second contract in which his only living child, Ella Lewis Tucker, joined. This writing recited that Mrs. Tucker held her father's will which should remain as written and the prospective bride would accept an allowance of $200 per month in full satisfaction of any and all claims she might have on the estate of W. W. Lewis by reason of their marriage, and "should (he) live two years or longer and the said Miss Beulah Lee Mills has lived with him and cared for and nursed him during that period, then it is agreed that she shall be paid out of his estate the sum of $5000. It is further agreed and understood by the parties hereto that Miss Beulah Lee Mills is to be left the sum of $1.00 in the will of Judge W. W. Lewis."

It is apparent that this marriage was not built upon romance but its foundation was cemented in mutual business benefits. Judge Lewis was securing a nurse, secretary, housekeeper and cook, all combined in a rather comely young woman of 33. She in turn was forsaking the business world in which she had a very good position and was obtaining financial security from a doddering, old invalid, whom she might call husband. It is intimated in the record the reason for the marriage was that she could live in the home of Judge Lewis, nurse and care for him without subjecting themselves to criticism. However, she testified she had a great love and affection for him.

 It is not contended that Judge Lewis failed to divulge to her before their marriage the size of his estate, which was more than $100,000. In addition to transferring to her the securities called for in their prenuptial agreement, he deeded to her five or six lots located in Florida, gave her a $1,000 diamond ring when she married him and a Ford convertible during their married life. She received some $15,-000 or $16,000 from Judge Lewis during the time she lived with him as his wife, which was less than four months. We can see no reason for reviewing their unfortunate domestic life, either in Kentucky or in Florida, since we are without power to reverse a judgment for divorce and it appears to us that Mrs. Lewis fared well when she received $15,000, or more, from Judge Lewis during the short time they were husband and wife. His treatment of her was not what one could call kind and considerate, but it was not violent or cruel. We think it was about what might be expected from an irascible, old, invalid. Likewise, she was not as patient, kind or considerate with him as might be expected of one with the devotion toward her husband which she professed. The law does not look with favor in granting alimony to a wife who marries for financial security with no intent of bestowing affection upon her husband. Hawkins v. Hawkins, 202 Ky. 55, 258 S.W. 962; Barnett v. Barnett, 292 Ky. 672, 167 S.W.2d 845.

 Complaint is made that the chancellor erred when he adjudged the wife "forfeited all claims she might have under any antenuptial contract filed with this record to any sum of (or) thing out of his estate." No restoration was asked by the husband of the property he gave his wife and none was decreed. As we understand that part of the judgment just quoted, it holds that Mrs. Lewis is to take nothing under the contract of March 25, 1948, when Judge Lewis dies, and we so construe it.

 But the chancellor erred when he allowed an attorney's fee of only $75 to the wife. This was a hotly contested case and rather a difficult one to practice. Some 200 pages of testimony were taken by depositions in Kentucky and in Florida, as the parties had lived in both states during their married life. Judge Lewis does not contend his wife's estate is sufficient to bear the expense of this litigation and makes no objections to the cost being taxed against him. He is a rich man with many business interests in Harlan County and his wife was seeking $50,000 alimony and maintenance of $500 per month. While Mrs. Lewis was not successful, her claim was asserted in good faith and was skillfully and vigorously prosecuted by attorneys of high standing and splendid ability. For the work and the responsibility shouldered in the disagreeable and heavy task placed upon them, we feel that a reasonable attorney's fee to be taxed as cost against Judge Lewis is $750. In Horton v. Horton, 276 Ky. 104, 122 S.W.2d 793, we said a $750 fee was reasonable to the wife although the husband was given the divorce and had an estate of only $25,000. That part of the judgment fixing the attorney fee for the wife at $75 is reversed and the chancellor is directed to fix this fee at $750 and tax it against Judge Lewis as part of the cost.

The judgment is reversed.