Hope TURNER, Appellant,

v.

Will TURNER, Appellee.

No. 15067.

Court of Civil Appeals of Texas.

Dallas.

April 20, 1956.

Palmer & Rochelle, Dallas, for appellant.

Clark, Coon, Holt & Reed and Harold Hoffman, Dallas, for appellee.

YOUNG, Justice.

Appeal is from the grant of divorce to appellee Will Turner upon his petition therefor; complaining also of the court's division of community property. The parties have been separated since February 1954, Mrs. Turner, with their minor daughter Judith, aged 13, (of whom she was awarded custody), returning to New York City, the place of her former residence. Prior to the trial and by agreement, defendant was allowed $350 per month for alimony and child support during pendency of suit; otherwise the amount fixed for support of child until 18 years of age was $200 per month.

The parties were married August 27, 1940 in New York City; second amended petition of plaintiff alleging that some time before the separation defendant commenced a course of cruel, harsh, and outrageous treatment toward him of such a nature as to render their further living together insupportable; in substance, that defendant had become completely indifferent to the welfare of husband and daughter, saying that he was repulsive to her, staying on because of the material things he could provide; and that pursuant to a scheme to abandon him she had run up clothing bills of some $4,900, including a $3,500 mink jacket, which latter article was turned back to the store; that said obligations, far beyond petitioner's means, had left him heavily in debt, greatly embarrassing him with creditors, causing nervous distress and suffering, inability to carry on with his business, and greatly damaging to health, both physical and mental. Defendant answered by general denial, alleging that suit had been brought without just cause; pleading condonation in defense, for custody of the daughter, and $500 per month as alimony and child support, also attorney's fees and fair division of property, both community and separate. Plaintiff filed an inventory and appraisement of property; the court, upon defendant's request, filing lengthy findings of fact and conclusions of law; in effect, that the testimony adduced was full and satisfactory, entitling plaintiff to a decree of divorce.[1]

Appellant vigorously contends herein that the statutory requirement of full and satis-

---

1. As typical of the nature and extent of these findings, we quote excerpts therefrom: "(7) Defendant during the last few months prior to final separation frequently expressed contempt for plaintiff. During the same period she told him frequently that she no longer loved him; that she found him distasteful and repulsive; that she hated herself for even continuing to live with him; that she wanted him to keep another woman; that she wanted to be set free; that she wanted plaintiff to leave the house and that she didn't want to be married any longer. All of such remarks were calculated to inflict extreme mental pain upon a person of plaintiff's emotional make-up, which was well-known to defendant, and did have such effect. (9) At a time when defendant knew that plaintiff was deeply in debt, and after plaintiff had continuously explained to defendant the necessity of saving a substantial part of his earnings, defendant purchased a mink jacket for $3,500 and charged same to plaintiff. Defendant knew that plaintiff would vigorously disapprove of such a purchase, as being beyond their financial means and station in life. While plaintiff was still at home with her, defendant purchased such mink jacket surreptitiously, and did not inform plaintiff of her conduct until ten days later when she telephoned him at Mobile, Alabama from Dallas, Texas. (10) Before informing plaintiff of her purchase of said mink jacket, defendant telephoned her lawyer by long distance from Dallas to New York, and consulted

factory evidence in a suit for divorce has not been met; the court's findings in such connection being contrary to and not supported by the evidence.

The story of this marital venture from beginning to unhappy close is set forth by the plaintiff husband over many pages of testimony; defendant denying most of the charges made and giving her own version of particular events. With exception of the witness Mrs. Olds on minor issue of cruelty, all disclosures were from husband and wife alone. There had been a prior separation, from June to August, 1953; due, according to appellant, to the husband's unnatural sexual demands, she being in ill health and suffering from chronic bladder trouble. After the final separation of 1954, Turner had visited her in New York, suggesting a reconciliation. His income for that year, after taxes, was some $14,000; testifying that for 1955 estimated revenues would be somewhat less.

Appellant first argues that plaintiff has pled no more than a case of abandonment by defendant for a period of less than three years; also that his later effort to effect a reconciliation demonstrates as a matter of law that their further living together was not insupportable. From the record it appears that defendant's return to New York was simply an aftermath of the stormy mink jacket episode of the preceding February, with the instant proceeding based solely on ground of statutory cruelty. And Turner's unsuccessful attempt to later salvage this marriage did not bar him from urging her prior acts of cruelty as grounds for the relief sought. Redwine v. Redwine, Tex.Civ.App., 198 S.W.2d 472.

As already seen, this record consists almost wholly of testimony from the respective parties, and highly conflicting as is to be expected. Undoubtedly the credibility of each was involved; counsel's pre-

him with regard to whether plaintiff could prevent her from purchasing such mink jacket, and with regard to whether plaintiff could compel her to return it to the store. (12) During a period of less than one month prior to final separation defendant surreptitiously purchased and charged to plaintiff $4,900 worth of clothing, of which $25 was for her daughter and the balance for herself, well knowing that plaintiff would be unable to pay for same and that when plaintiff discovered such conduct he would be subjected to unendurable mental strain, and humiliation with his creditors. (13) During the period of less than one month prior to final separation, while defendant was purchasing $4,900 worth of clothing, she allowed all household bills to go unpaid, including payments on the house, car, and deep freeze, and bills for utilities and food. Although she had been provided with an adequate household allowance for the payment of such bills, defendant allowed some of such obligations to become as much as two months in arrears and allowed the telephone bill to go unpaid until the telephone company disconnected the telephone, to the extreme embarrassment and humiliation of plaintiff. (15) At the time the parties were finally separated plaintiff was left with $7,311.58 in bills currently due, after returning for credit the $3,500 mink jacket and about $700 worth of other clothes purchased by

defendant. (20) Defendant during the trial of this cause publicly accused plaintiff of having engaged in unnatural sexual acts with her. I find that such accusation was without foundation in fact and that it had the effect of inflicting further mental suffering upon plaintiff. (21) Defendant during the trial of this cause publicly stated that she did not think she could live with plaintiff as his wife or enjoy his companionship and affection any longer, which was calculated to and did inflict deep mental pain and humiliation upon plaintiff."

The court refused appellant's request for the following additional findings: "(1) That in February of 1954, when plaintiff returned from Mobile, he came unannounced into plaintiff and defendant's home in the middle of the night, put his hands on defendant's throat, and told her he ought to choke her or kill her. (2) That after the return of the plaintiff from the war he habitually insisted that the defendant indulge in unnatural sexual acts with him. (3) That in June of 1954, the plaintiff visited the defendant in New York and asked her to return to him and live with him as his wife. (4) That any acts of cruelty of the defendant toward the plaintiff were in retaliation for acts of cruelty by the plaintiff towards the defendant in a similar or greater degree."

dominant complaint being that the trial court has "discredited practically all of appellant's testimony and determined nearly all of appellee's testimony in his favor * * *." Obviously, under the foregoing record, the following rules of decision become applicable and controlling in the disposition of this appeal: "Court of Civil Appeals, in determining whether evidence in divorce case is full and satisfactory, may examine the statement of facts and, in so doing, is not necessarily bound by trial court's findings, although findings are entitled to great deference. Vernon's Ann. Civ.St. art. 4632. * * * Where Court of Civil Appeals, in determining whether evidence in divorce case is full and satisfactory, is confronted by testimony of one witness which is directly contradicted by that of another witness, Court of Civil Appeals must accept trial court's decision upon the point. Vernon's Ann.Civ.St. art. 4632. * * * If evidence in divorce case is pronounced clear and satisfactory by trial court, and no more than an issue of credibility is involved on appeal, such evidence must be accepted as clear and satisfactory by Court of Civil Appeals. Vernon's Ann.Civ.St. art. 4632. * * * Evidence may be full and satisfactory so as to support judgment for divorce even though evidence is only the uncorroborated testimony of one of spouses contradicted by the other. Vernon's Ann.Civ.St. art. 4632." Mortensen v. Mortensen, Tex.Civ. App., 186 S.W.2d 297, 298, syls. 15, 16, 17, and 18. And likewise the language of this Court in Finn v. Finn, Tex.Civ.App., 195 S.W.2d 679, 681, needs only to be reiterated: " * * * testimony, as to weight and credibility, was for determination by the trial court, Art. 4633 * * *. In the instant suit, * * * as between the principals to this marital venture, it is obvious through 162 pages of testimony that the controversy has been fully developed, the court's ruling dependent entirely upon which party is to be believed, from observation of witnesses, their demeanor and deportment upon the trial. And where the testimony of parties is full, though sharply conflicting, the generally accepted rule is

that (1) we must accept the trial court's decision upon the point, as we possess no power to pass upon the credibility of witnesses and the weight to be given their testimony (citations); and (2) considering the wide discretionary powers of a trial judge in matters of divorce, their determination that the testimony is clear and satisfactory in a given case will not be disturbed by an appellate court, absent a showing of clear abuse of power (citations)." See also Moon v. Moon, Tex.Civ.App., 186 S.W.2d 362; Hogue v. Hogue, Tex.Civ. App., 242 S.W.2d 673. Article 4633 provides in part: "In all such suits and proceedings the husband and· wife shall be competent witnesses for and against each other, but neither party shall be compelled to testify as to any matter that will criminate himself or herself * * *."

According to the testimony of each, these parties can no longer live together; and there is no provision in our statutes for appellant's alternative of a legal separation.

Appellant further argues that the court's order of a division of property was so unfair under the circumstances as to constitute an abuse of discretion. Appellee's sworn inventory lists four items: The home at Richardson (value above the mortgage) $1,947.12; cash in Bank $1,372.68; one-half interest in Santa Gertrudis cow $675; Household furnishings $800. Property acquired while the parties were living in New York State was estimated at $3,108 exclusive of cash value of insurance policies. All of the New York property was awarded to appellee and the Texas assets divided equally between them. Mrs. Turner came into a $14,000 inheritance in 1952, of which some $4,000 was left at time of trial, after refurnishing the New York apartment. She is of limited business experience and contends that the trial court did not fairly take into consideration the earning power, business opportunities, capacities and abilities of the parties; in particular, that the New York property acquired during marriage should have been treated as community, though concededly it was the separate property of the husband.

On the other hand, appellee points out that this wife actually received more than one-half of the community, the attorney's fee ($650) having been paid out of his share, when normally the expense should have been a community charge or against the interest of the offending spouse. The alimony pending appeal is also an expense borne by Turner. The order made is seen to involve no abuse of discretion under the court's power, Art. 4638, V.A.C.S., to make such property division as may be deemed "just and right, having due regard to the rights of each party * * *."

All points of appeal are overruled and judgment of the trial court is affirmed.