Dorothy Bob LIVINGSTON, Appellant,

v.

Charles W. LIVINGSTON, Appellee.

No. 13061.

Court of Civil Appeals of Texas.

Galveston.

Dec. 6, 1956.

W. L. Coley and E. S. Allen, Fort Worth, for appellant.

R. W. Lawrence, Palestine, for appellee.

HAMBLEN, Chief Justice.

This appeal is from a judgment of divorce entered by the District Court of Anderson County by which appellee was granted a divorce from appellant upon the ground that appellant was guilty of excesses, cruel treatment and outrages toward appellee of such nature as to render their further living together insupportable. Two points of error are urged. The first point is to the effect that appellee had not resided in Anderson County for six months next preceding the filing of the suit, as required by Art. 4631, V.A.T.S. By her second point appellant says that the evidence is insufficient to support the judgment under the provisions of Art. 4632, V.A.T.S. For reasons which we will state, we overrule both points of error.

Relative to appellant's first point of error the record discloses that appellant and appellee had lived together at Palestine, Anderson County, Texas, for about four years prior to their separation, occupying a rented apartment. Appellee was employed as a salesman for R. J. Reynolds Tobacco Company. His territory included eight counties, including Anderson. He traveled through such territory by automobile, making calls upon customers therein. In connection with his business he received all of his mail and supplies in Palestine. His custom was to depart from Palestine on Monday morning of each week and return on Friday evening, spending Saturdays and Sundays at his home. During the week he obtained lodging at such places within his territory as were convenient to the pursuit of his business.

For reasons not presently material, the parties on September 9, 1955, went together to an attorney in Palestine and engaged his services to institute on behalf of appellant a suit for divorce against appellee. Appellee on that occasion told such attorney to send a copy of the petition for divorce together with a waiver of service of citation to him at Nacogdoches, Texas, to which city he was that day removing. The attorney, in compliance with such instructions, mailed a copy of the petition and a waiver of service to appellee in Nacogdoches where appellee, upon receipt thereof, executed the waiver and returned it by mail to the attorney in Palestine.

Appellant caused the suit for divorce which she had insituted to be dismissed on October 8, 1955. Upon learning of such dismissal, appellee on October 19, 1955, instituted this suit, alleging that he had resided in Anderson County for six months next preceding the filing thereof. Appellant answered and, among other defenses, specifically denied appellee's allegation of residence in Anderson County. The cause was heard by the Court without a jury and a judgment granting a divorce was entered on May 15, 1956. In response to appellant's request therefor, the trial court made findings of fact. Material to the point of error under discussion are the following:

"4. Plaintiff has been a bona fide inhabitant of the State of Texas all of his life and Anderson County had been the place of his residence for approximately 4 years preceding the date of filing of this suit.

"5. Plaintiff was temporarily in Nacogdoches County, Texas, on October 19, 1955, the date this suit was filed but not with the intention of changing his domicile from Anderson County.

"6. Plaintiff never intended to abandon Anderson County as his place of residence when he went to Nacogdoches County on or about the date of separation.

"7. Plaintiff returned to Anderson County the early part of November in accordance with his intentions at all times.

"8. From September 9, 1955, to October 19, 1955, plaintiff was employed as a salesman for Reynolds Tobacco Company. His headquarters for company business was Palestine, Texas. His sales territory comprised several counties including Anderson and Nacogdoches. His company mail was addressed to him in Palestine; his salary check was mailed to him in Palestine; and his supplies were shipped to him in Palestine. His overnight expenses were not paid in Palestine; they were elsewhere in the territory. His forwarding address at Nacogdoches, Texas, was General Delivery. His family doctor continued to be Dr. J. J. Murphy in Palestine. His church membership was in the Memorial Christian Church in Palestine. His Cigarette Dealer Permit shows his address as Box 143, Palestine, Texas. He had an account at the Royall National Bank in Palestine. He paid taxes on his car to the City of Palestine for the year 1955. His Withholding Tax Statement for 1955 lists his address as Palestine, Texas."

Among the conclusions of law filed is the following:

"1. Plaintiff has been for a period of 12 months prior to the filing of his petition herein an actual bona fide inhabitant of the State of Texas, and has resided in Anderson County for at least six months preceding the filing of his petition."

There is support in the record for each of the findings of fact set forth above. The specific facts found by the court set forth in Finding No. 8 are established by undisputed evidence. Appellee testified that he went to Nacogdoches on September 9, 1955, as a temporary arrangement pending the determination of appellant's divorce suit in order to avoid embarrassment to the minor children of the marriage. He further testified that he at no time intended to abandon Anderson County as his residence, but on the contrary intended at all times to return to that county when the purpose of his temporary absence had been accomplished. The evidence shows that when appellant caused her suit for divorce to be dismissed, she moved to her parents' home at Fort Worth, taking the children with her. Shortly thereafter, in November, 1955, appellee returned to and remained in Palestine.

■ We think that the trial court properly concluded that appellee had resided in Anderson County for at least six months preceding the filing of his petition, within the meaning of Art. 4631, V.A.T.S. While citation of authority would not seem to be required, appellee in his brief has cited the following, all of which support the trial court's conclusions: Jones v. Jones, Tex. Civ.App., 176 S.W.2d 784; Gallagher v. Die, Tex.Civ.App., 260 S.W.2d 128; Hogue v. Hogue, Tex.Civ.App., 242 S.W.2d 673; Johnson v. Johnson, 296 Ky. 155, 176 S.W. 2d 256; Dahl v. Dahl, Tex.Civ.App., 253 S.W.2d 691.

Relative to appellant's second point of error, the record reflects the following testimony of the appellee: "Our marriage had grown steadily worse for the last couple of years. We weren't getting along; fusses, scraps, not physical, mental. We got to where we couldn't agree on anything; we couldn't sit down and talk about anything. One of us was always to blame for what was going on. We were unable to save a penny; head over heels in debt; it was a wedge being driven between my family and myself. She went so far as to even refuse to let my parents see the children, which they haven't seen since last June. Then to cap it all off, she finally told me she didn't have any confidence in me. We were talking one night, I got to discussing it and neither one knew what we were going to do, but we knew it couldn't go on like it was, so, we both agreed to a divorce."

A substantial portion of the quoted testimony of appellee is either undisputed or is actually corroborated by appellant herself. The record shows without dispute that the appellant insisted on handling the family finances. Appellee was shown to receive a disability compensation check resulting from his service in World War II in the amount of $50 each month. Appellant allowed appellee one-half thereof, or $25, to support himself while on the road. Appellant resented appellee's fishing for recreation on Saturday mornings. Appellee had not spent the night with his parents in Ft. Worth in over two years because of appellant's refusal to go and stay with him. Appellant, on cross-examination, affirmatively stated that she did not want appellee's parents to see or visit with the minor children of the marriage and objected to their presence. We quote her testimony while being interrogated by the trial judge, in part as follows:

"Q. Would you be willing, if you go back together, if he would take you back, would you be willing for the children to see his mother? A. No.

"Q. If it was depending upon that, you wouldn't go back to him. A. I don't want to have any more to do with his family.

"Q. If it was dependent upon them visiting his people the same as they visit you, you wouldn't take him back? A. He may visit any time he wants to.

"Q. That's not what I asked you. If it was dependent upon the children visiting his parents exactly like—and the children treating his parents exactly like they treated yours, you wouldn't be willing to take him back on those terms? A. No sir. I have put up with it for over fourteen years."

Included among the findings of fact made by the trial court is No. 13, as follows:

"13. Defendant was guilty of the following acts of cruelty toward plaintiff:

"A. She told him that she had no confidence in him shortly before the date of separation when he expressed a desire to go into business for himself.

"B. She insisted on managing the family finances and plaintiff actually did not have sufficient funds to support himself while away from home on the job.

"C. Defendant showed no love or affection toward plaintiff when he returned home on weekends.

"D. Defendant resented and objected to plaintiff's enjoying any recreation during his time off on weekends.

"E. Defendant exhibited an antagonistic attitude toward plaintiff's parents on the witness stand.

"F. Defendant refused to permit plaintiff to see his children from the date of separation to the date of trial on April 4, 1956.

"G. Defendant refused to permit said minor children to visit plaintiff in the home of his parents in Fort Worth, Texas during such period of time.

"H. She wanted him to give up all family relations with his mother."

There appears to this Court to be ample support in the record for the stated findings of fact by the trial court. While we again feel that no citation of authority is required, we cite the following in support of the court's conclusions of law that the actions of appellant toward appellee constitute cruel treatment of such nature as to render their further living together insupportable: Mitcham v. Mitcham, Tex.Civ. App., 202 S.W.2d 947; Hogue v. Hogue, Tex.Civ.App., 242 S.W.2d 673; Coody v. Coody, Tex.Civ.App., 240 S.W.2d 377; Harrell v. Harrell, Tex.Civ.App., 206 S.W. 109; McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459.

It is ordered that the judgment of the trial court be affirmed.

CODY, J., not sitting.