**Robert Myron GASSMAN, Plaintiff and Appellee,**

v.

**Marilyn Judy GASSMAN, Defendant and Appellant.**

**Nos. 12714, 12718.**

Supreme Court of South Dakota.

Submitted on Briefs April 21, 1980.

Decided Sept. 3, 1980.

Wilson Kleibacker of Lammers, Lammers, Kleibacker & Casey, Madison, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

The decree of divorce entered herein in favor of Robert Myron Gassman (appellee) and against Marilyn Judy Gassman (appellant), terminated a marriage of less than two years' duration. The trial court granted the decree on the grounds of extreme cruelty; divided the property; and denied appellant alimony, attorney fees, and money damages for injuries sustained in an alleged assault on her by appellee. From the judgment appellant appeals and appellee cross–appeals. We affirm in part, reverse in part, and remand.

Appellee, a farmer in the vicinity of Howard, South Dakota, met appellant at a bar in Howard where she was employed. She was a divorcee with two minor children from her previous marriage. From shortly before Christmas 1975 to May 1976, the acquaintance blossomed into a romance, and the couple were engaged in May 1976 and married in August 1976. Except for the first week of their marriage when they were honeymooning, and the second week when they lived with his parents while they painted and fixed up the farmhouse for occupancy, they lived on a farm appellee was buying on contract for deed. In January 1978 appellee moved out and served divorce papers. The grounds alleged in the complaint were infliction of grievous mental and physical suffering. Appellant cross–complained, also alleging infliction of grievous mental and physical suffering. The trial court found in favor of appellee and against appellant on the issue of grounds for divorce. That is the first issue we shall discuss.

The seed for appellee's claim of cruel treatment was planted before the couple was even engaged; indeed, before they had even met. Appellant, while undergoing treatment at a state hospital, was the victim of a rape attack which resulted in her becoming pregnant. Because of possible complications due to the pregnancy following too soon after the birth of her youngest child, she sought and underwent an abortion in Rapid City. While the couple was keeping company, but before their engagement, the question of appellee's feelings about abortion came up. He expressed a strong opposition to the procedure. When he later asked appellant if she had had an abortion, she denied it. About a month or six weeks after their wedding, appellee found reason to believe that appellant had lied when she denied having had an abortion. He accosted her, whereupon appellant admitted that she had had one and explained the reason for it. Appellee says the

marriage broke down at that point. As appellee testified: "And she broke down and told me that she had had an abortion and she told me the whole story of why she had had it and this and that and its—I would say that is when all hell broke loose because it's about one big lie and then a little lie and then all kinds of lies. I don't know what to believe." And again:

Q. Why didn't you do something at that point?

A. Well, I tell you, I had a very hurt feeling. I had been lied to, and a lot of little lies opo (sic) up around a big one, I'll clue you in on that.

Q. Well, you clue the Court in.

A. And it is just—I couldn't look at her and say, "Hey, that's my wife, there she is," you know, feeding two kids and she killed one, that is the way I feel.

In the findings of fact the trial court found:

That the plaintiff has a deep and firm conviction against abortion. This the defendant admits. That had he known of the defendant's prior abortion, or her first pregnancy where she gave her first child up for adoption, the marriage, in all probablity (sic), would not have taken place. The defendant's deceitful action before the marriage, and her continual lies and actions after its discovery had a serious effect upon the mental state of the plaintiff, and the Court finds that the actions of defendant constituted extreme mental cruelty upon the plaintiff. The lies and deceit of defendant were not limited to her past, and the basis for entering into the marriage, but continued after the marriage and made the marriage state between the parties impossible.

In our examination of the record the above finding is not entirely supported by the evidence. The fact that appellant lied about the abortion before the marriage is undisputed; however, other than the general conclusory testimony of the appellee about "all kinds of lies," there is no evidence of any specific lies to even suggest support for the trial court's finding of continual lies and deceit continuing after the marriage.

On the basis of the above finding of fact, the trial court entered Conclusion of Law 2: "That the plaintiff has grounds for divorce against the defendant based upon grievous mental suffering." The only portion of the finding that is supported by the evidence is the pre—marital misconduct of the appellant in lying about the abortion. SDCL 25–4–2 lists the statutory grounds for divorce as: "(1) Adultery; (2) Extreme cruelty; (3) Willful desertion; (4) Willful neglect; (5) Habitual intemperance; (6) Conviction of felony." SDCL 25–4–4 defines "extreme cruelty" as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." Nothing in this statute indicates, nor does appellee cite us to any authority, that the pre—marital conduct such as was admitted to by appellant constitutes extreme cruelty.

The conduct of which appellee complained smacks more of fraud than mental cruelty. SDCL 25–3–6 provides for annulment if at the time of the marriage the consent of either party was obtained by fraud. This case is not before us in that posture, so we do not suggest that appellant's deceit as revealed here would constitute such fraud which would render the marriage voidable. It is noteworthy that the above remedy is not available to a deceived party if "such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabitated with the other as husband or wife." SDCL 25–3–6.

On the other hand, the evidence clearly demonstrates that the marriage is beyond salvage. There is considerable evidence of discord occasioned by appellee's attitudes and actions. He continually berated appellant and called her "murderer" and "whore." Finally, appellee moved out of the house and terminated the marital relationship, all of which we feel amply supports appellant's complaint on the grounds of mental cruelty.

The trial court found: "Any misconduct of the plaintiff claimed by defendant was forgiven by defendant, who on numerous occasions requested that the plaintiff move back into the family home after their separation and drop his divorce action." In effect, it concluded that by trying to effect a reconciliation appellant had condoned appellee's misconduct. This is a rather ludicrous conclusion inasmuch as the trial court did not consider eighteen months' cohabitation with continuing marital relations to be condonation of appellant's misconduct.

■■■ This court has not had occasion to write extensively on the question of what minimum criteria must be present to constitute condonation. For the purposes of this case, where we have at best an offer to reconcile, we adopt the decision of the Michigan Supreme Court in *Melinn v. Melinn*, 329 Mich. 96, 99, 44 N.W.2d 886, 888 (1950), wherein it held that to constitute condonation there must be "forgiveness, reconciliation, and reunion, and restoration of all marital rights." See also SDCL 25–4–22 and 25–4–23. Obviously in the instant case there was no reconciliation, there was no reunion, and there was no restoration of all marital rights after the parties had separated and appellant had asked her husband to return. Likewise, the Court of Civil Appeals in Texas, in dealing with the issue where the husband had visited the wife after they had separated and suggested a reconciliation, held: "[The husband's] unsuccessful attempt to later salvage this marriage did not bar him from urging her prior acts of cruelty as grounds for the relief sought." *Turner v. Turner*, 289 S.W.2d 836, 838 (Tex.Civ.App.1956).

■■ We hold the trial court's conclusion to be totally in error. Condonation, to be a bar to divorce on grounds of extreme cruelty, has to rise far above attempted reconciliation. The law favors reconciliation over divorce. The courts should encourage it rather than penalize it.

We therefore reverse the judgment and decree of the trial court and remand with instructions to the trial court to enter judgment and decree of divorce for appellant on the grounds of mental cruelty inflicted by appellee.

With respect to the issue of the property settlement, which both parties contest, we are disposed to affirm the trial court. We have recently discussed the scope of review of the trial court's decision in arriving at property divisions in *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980). " 'In reviewing the division of property . . . we take cognizance of the fact that the trial court has broad discretion in making such division . . . and we will not modify or set them aside unless it clearly appears that the trial court abused its discretion.' " *Hanks v. Hanks*, id. at 526; *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978).

■■ As noted in *Hanks, supra*, fault is no longer a criterion and it does not appear to us that the trial court's division was influenced by the fault of appellant as it had erroneously found it. The other criteria that come into play are: (1) the duration of the marriage; (2) the value of the property of each; (3) their ages, their health and competency to earn; and (4) the contribution of each to the accumulation of the property. *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977).

■■ The principal criterion applied by the trial court was the very short duration of the marriage. It found that "the contributions made by the defendant to the assets of the farm are small[.]" From our review of the evidence, and giving the trial court's determination due regard, we cannot say that it abused its discretion, and accordingly we affirm the property division.

■■ With respect to the failure to award alimony, again we discussed the review and the criteria extensively in *Hanks, supra*. In its Finding of Fact 16 the trial court noted that appellant is an able–bodied woman capable of earning a living wage. There is some evidence that after commencement of the divorce action, and while it was still pending, appellee attacked appellant inflicting such injuries on her that she was hospitalized for at least one week. On appeal

appellant takes issue with the failure of the trial court to award money damages for injuries resulting from the assault. The thrust of this argument apparently goes to an award of alimony or support because a damage suit for tort is hardly a matter to be tried in a divorce action. There was no attempt to amend the pleadings to encompass this issue nor did the trial court make any findings or conclusions thereon. Appellant could have started a civil suit for damages for personal tort committed by appellee as this court decided in *Scotvold v. Scotvold*, 68 S.D. 53, 298 N.W. 266 (1941). In any event, there is no evidence that appellant was permanently injured in any degree to refute the trial court's finding quoted above, and we therefore affirm that portion of the decree.

Finally, regarding the failure of the trial court to allow appellant reasonable attorney fees to defend the lawsuit, this court has said: "The trial court may allow attorneys' fees to a wife in a divorce action 'where the allowance of the same before or after judgment shall seem warranted and necessary to the court.' SDCL 15–17–7." *Wallahan v. Wallahan*, 284 N.W.2d 21, 27–28 (S.D. 1979).

This court has also "repeatedly held that the allowance of attorneys' fees to a wife rests in the sound discretion of the trial court, and will not be interferred [sic] with by this court unless it appears that there is error in the exercise thereof." *Lien v. Lien*, 278 N.W.2d 436, 443 (S.D.1979). This court then went on to say that determination by the trial court must rest on the individual facts of each case.

 In view of the reversal of the decree on the issue of the grounds for divorce, we also reverse the denial of attorney fees.

Appellee initiated the action on unmeritorious grounds. Appellant required assistance of counsel to defend against those grounds and to assert her own meritorious ground, and to appeal the trial court's decision to this court. Appellee appears on the record to be far more able to bear this expense than appellant. We therefore remand this case for further proceedings in the trial court to determine the reasonable amount of fees to be allowed counsel for appellant.

DUNN and HENDERSON, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., concur specially.

WOLLMAN, Chief Justice · (concurring specially).

Although I join in the result reached by the majority opinion, I am not in accord with all that is said concerning the trial court's rulings.

FOSHEIM, Justice (concurring specially).

I agree with the majority opinion that defendant's request for plaintiff to move back to the family home is not alone sufficient to satisfy the requirements of condonation.[1] However, when added to the continuing marital relations, then condonation would ordinarily be established. 24 Am. Jur.2d Divorce and Separation § 214 (1966). Cruelty is generally a course of conduct rather than a single act, and so a continuance of sexual cohabitation after acts of cruelty cannot be considered as condonation in the sense in which it would be after an act of adultery, 24 Am.Jur.2d Divorce and Separation § 216 (1966), unless accompanied by an express agreement to condone under SDCL 25–4–23.[2] There was no such condonation in this case.

1. SDCL 25–4–22 provides in part:
 The following requirements are necessary to condonation:
 (1) A knowledge on the part of the condoner of the facts constituting the cause of divorce;
 (2) Reconciliation and remission of the offense by the injured party;
 (3) Restoration of the offending party to all marital rights.

2. SDCL 25–4–23 provides:
 Where the cause of divorce consists of a course of offensive conduct, or arises in cases of cruelty from excessive acts of ill-treatment, which may aggregately constitute the offense, cohabitation, or passive endurance, or conjugal kindness shall not be evidence of condonation of any of the acts con-

stituting such cause, unless accompanied by an express agreement to condone. In such cases, condonation can be made only after the cause of divorce has become complete, as to the acts complained of.