**Lois F. HENRY, Plaintiff and Appellant,**

v.

**Harold L. HENRY, Defendant and Appellee.**

No. 18836.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Decided July 26, 1995.

Donald N. Srstka, Sioux Falls, for plaintiff and appellant.

William D. Gerdes of Williams, Gellhaus & Gerdes, Aberdeen, for defendant and appellee.

AMUNDSON, Justice.

Lois Henry (Lois) appeals the trial court's award of summary judgment to her ex-husband, Harold Henry (Harold), arising from claims of assault, battery and intentional infliction of emotional distress. We affirm in part, reverse in part, and remand for trial.

## FACTS

Lois and Harold were married on February 4, 1961, and resided on a farm near Seneca, South Dakota. In the mid–1980s, the parties began experiencing marital problems and Harold became physically and verbally abusive. On July 7, 1988, Harold, in a rage, came into the house carrying a sledgehammer and threatened Lois, which caused her to fear for her life. On June 14, 1989, Lois obtained a protection order, describing several acts and threats of domestic abuse by Harold. She sought another protection order on August 16, 1989, again alleging acts and threats of physical harm. A permanent protection order was issued.

On September 28, 1989, Lois filed for legal separation. Harold counterclaimed for divorce on November 15, 1989. Due to fear of her husband, Lois fled the couple's farm home and moved to Seneca. Despite Lois' relocation, Harold continued his threatening and violent behavior. On one occasion, he gathered Lois' personal belongings left at the ranch house and set them on fire. He also chased Lois with his pickup while she was riding her bicycle. Lois expressed concerns for Harold's mental health to the trial court and medical professionals. Ignoring all protection orders, Harold continued to threaten her by mail and phone.

On November 20, 1990, Harold telephoned Lois, telling her to come to the farmhouse to retrieve a few personal belongings still there. While in the house, she heard her car horn and went outside to find Harold in the vehicle. When Lois tried to get him out of the

car, a struggle ensued. Harold attempted to handcuff Lois. Unsuccessful, he grabbed her from behind and maced her. Harold also physically assaulted and maced a neighbor who came to Lois' aid. Harold pleaded guilty to assault charges arising out of this incident. He was fined and instructed by the court not to communicate with Lois in any way.

The parties entered into a divorce and settlement agreement on December 7, 1990. Both were represented by counsel.* The settlement agreement contained a release for all legal claims between the parties "arising out of or by virtue of the marital relation of the parties." Lois was awarded the marital residence. However, she filed a contempt action against Harold on January 14, 1991, due to the condition of the premises at the time she agreed to take it over. The home was damaged, with violent notes and representations posted throughout the premises. Harold was cited for contempt and fined.

Continuing to blatantly ignore the trial court's instructions, Harold kept threatening Lois after the divorce. On January 15, 1991, Lois received a letter and accompanying picture of a grave dug in the basement of a house, with the caption in Harold's writing stating "actual photo husband dig[g]ing grave for wife in basement." On August 30, 1991, Lois received a videotape of World War II Nazi torture techniques. On July 5, 1992, Harold discharged a pistol numerous times in her direction. Sometime in the summer of 1993, Lois sold some jointly owned farm equipment and reinvested the proceeds into newer models. Harold sent a letter to different sectors of the media, stating that Lois committed fraud by this action. He further reported a theft to the Faulk County Sheriff who turned the matter over to the state's attorney. On September 24, 1993, after being advised of the circumstances, however, the State dropped all charges against Lois.

Thereafter, Lois filed suit against Harold for intentional infliction of emotional distress and assault and battery. Harold motioned for summary judgment and a hearing was held. The trial court granted the motion and

* Counsel of record for Lois on appeal did not represent her in the divorce proceedings.

signed its order for summary judgment. Lois appeals.

## ISSUES

I. WHETHER AWARDING SUMMARY JUDGMENT TO HAROLD WAS APPROPRIATE?

II. WHETHER THIS CASE IS DISTINGUISHABLE FROM SOUTH DAKOTA PRECEDENT, PICKERING V. PICKERING?

III. WHETHER THE TRIAL COURT VIOLATED THE OPEN COURTS PROVISION AND SOUTH DAKOTA STATUTES BY AWARDING SUMMARY JUDGMENT TO HAROLD?

IV. WHETHER THE RELEASE CONTAINED IN THE PROPERTY SETTLEMENT AGREEMENT PROHIBITS LOIS FROM SUING HAROLD FOR TORTIOUS CONDUCT WHICH OCCURRED DURING THE MARRIAGE?

## STANDARD OF REVIEW

The standard of review on a motion for summary judgment is " 'whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.' " *Farmers & Merchants State Bank v. Teveldal,* 524 N.W.2d 874, 877 (S.D.1994) (quoting *Mooney's v. S.D. Dept. of Transp.,* 482 N.W.2d 43, 45 (S.D.1992)). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* (citation omitted). "Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper." *Id.*

## DECISION

Lois argues the trial court erred in awarding summary judgment to Harold. For the sake of argument at the summary judgment hearing, Harold stipulated to all relevant facts. Therefore, the sole question became a matter of law. The trial court granted Harold's motion, relying on this court's decision of *Pickering v. Pickering,* 434 N.W.2d 758 (S.D.1988).

In *Pickering,* this court held that the cause of action for intentional infliction of emotional distress was not available between spouses for conduct which leads to the dissolution of the marriage. *Id.* at 761. In that case, the plaintiff-husband was precluded from suing his ex-wife and her lover for intentional infliction of emotional distress which arose out of their affair and the subsequent birth of their child. The court stated:

> "There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of feelings of others are beyond any effective legal remedy and any practical administration of the law. To attempt to correct such wrongs or give relief from their effects 'may do more damage than if the law leaves them alone.' "

*Id.* (quoting *Richard P. v. Superior Court (Gerald B.),* 202 Cal.App.3d 1089, 249 Cal. Rptr. 246 (1 Dist.1988)).

■ In reviewing the *Pickering* decision, it is obvious that it is factually distinguishable from this case because it dealt with pre-divorce conduct. Here, we are considering the parties' settlement agreement along with post-divorce conduct. *Pickering,* therefore, is not controlling.

■ SDCL 25–4–1 provides that the effect of a divorce judgment "is to restore the parties to the state of unmarried persons."

> The decree creates a new relationship between the parties, making them strangers in law with no legal obligations to each other except those preserved by decree or contract.... the decree restores the parties to the status or estate of unmarried or single persons; and *no future rights can thereafter spring out of, or arise from, the former relation.* (Emphasis added.)

27C C.J.S. *Divorce* § 761 (West 1986). After the decree of divorce is entered, the parties no longer have any legal strings attached relating to the marital relationship. Harold

has cited no authority supporting his claim that he was released by the parties' agreement for any suit for conduct against Lois after the decree was signed. Lois is entitled to sue Harold for her damages caused by Harold's misdeeds.

Many jurisdictions have allowed former spouses' claims in tort for assault and battery which occurred during the marriage. *Henriksen v. Cameron,* 622 A.2d 1135 (Me.1993); *Caron v. Caron,* 577 A.2d 1178 (Me.1990); *Flores v. Flores,* 84 N.M. 601, 506 P.2d 345 (1973); *Heino v. Harper,* 306 Or. 347, 759 P.2d 253 (1988); *Goode v. Martinis,* 58 Wash.2d 229, 361 P.2d 941 (1961); *Courtney v. Courtney,* 186 W.Va. 597, 413 S.E.2d 418 (1991), *appeal after remand,* 190 W.Va. 126, 437 S.E.2d 436 (1993); *Stuart v. Stuart,* 140 Wis.2d 455, 410 N.W.2d 632 (1987), *aff'd.* 143 Wis.2d 347, 421 N.W.2d 505 (1988). In recognizing the cause of action, the West Virginia Supreme Court stated in *Courtney:*

'Of significance is the right to recover for the intentional tort. Our law before today practiced a cruel paradox. Under the guise of promoting family harmony, it permitted the wife beater to practice his twisted frustrations secure in the knowledge that he was immune from civil action except for a divorce, and that any criminal penalty would ordinarily be a modest fine. If nothing else, the knowledge of a monetary judgment with punitive damages may stay such violence.'

413 S.E.2d at 427 (quoting *Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978)). This court, in *Gassman v. Gassman,* 296 N.W.2d 518, 522 (S.D.1980), acknowledged that a spouse can bring a civil suit for damages caused by tortious conduct of the other spouse. *See Scotvold v. Scotvold,* 68 S.D. 53, 298 N.W. 266 (1941). In *Gassman,* the record was barren of a settlement agreement which was entered into by the parties, containing a mutual release for pre-divorce conduct.

■ Despite the potential for entertaining such a claim, however, Lois waived that opportunity by signing a release in the parties' settlement agreement. We have held that when asked to interpret a property settlement agreement, a trial court applies contract principles. *Steffens v. Peterson,* 503 N.W.2d 254, 258 (S.D.1993). "One of these principles of construction is that a court should, if possible, ascertain and enforce the mutual intention of the parties as set forth in their agreement." *Id.* at 258.

The provision at issue in the decree provided that each party releases the other "from any and all rights, claims, demands or obligations arising out of or by virtue of the marital relation[.]" A clear reading of this agreement between the parties shows that they were settling all pre-divorce claims. We find the trial court was correct to interpret this language to grant summary judgment precluding Lois from suing Harold for pre-divorce tortious conduct.

■ Nevertheless, we do not agree that the release precludes Lois from bringing actions for intentional infliction of emotional distress or assault and battery for conduct occurring *after* the divorce. The goal of a release agreement signed between the parties is "achieved by extinguishing any claims, rights, and responsibilities that existed *prior to the signing of the agreement.*" Alexander Lindey, *Lindey on Separation Agreements and Antenuptial Contracts,* § 26.01 (Vol. 2, 1995) (emphasis added). The language of the release agreement is silent about post-divorce claims and the "marital relation" no longer exists between these parties. It therefore follows that the release between Lois and Harold does not pertain to Harold's tortious acts which allegedly occurred post-divorce.

Although Lois signed a release, it only bars actions for conduct prior to the divorce. Lois is entitled to the opportunity to present her post-divorce claims before a jury. Summary judgment was inappropriate with regard to the post-divorce conduct.

In view of our holding, it is unnecessary to reach the remaining issue.

Affirmed in part, reversed in part, and remanded.

MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.